IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 20-1593 |
| | : | |
| v. | : | |
| | : | |
| TODD LAHR and THOMAS MEGAS, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                                                                                    July 20, 2022

Over the course of ten months, the plaintiff, an independent agency of the United States, attempted to serve and contact one of the defendants, who had been charged with operating an offering fraud and Ponzi scheme and engaging in the unlawful unregistered sales of securities involving two entities. When the defendant did not respond to the complaint or otherwise contact the plaintiff or this court, despite evidence he knew of the litigation, this court entered a default judgment against him. Shortly thereafter, the defendant filed a motion to dismiss the default judgment, arguing the plaintiff (1) engaged in misconduct that prevented the defendant from fully and fairly presenting his case and (2) improperly served him, rendering the default judgment void. Both claims arise under Rule 60(b) of the Federal Rules of Civil Procedure, which provides relief from a default judgment only in limited circumstances. Because the defendant has not provided evidence of such limited circumstances, the court will deny his motion to dismiss the default judgment.

I.        FACTUAL AND PROCEDURAL HISTORY

The plaintiff, the United States Securities and Exchange Commission ("SEC"), initiated this action by filing a complaint against the defendants, Todd Lahr ("Mr. Lahr") and Thomas Megas ("Mr. Megas"), on March 23, 2020.[1] Doc. No. 1. In the complaint, the SEC asserted the defendants fraudulently operated an offering fraud and Ponzi scheme, through which they sold over a million dollars in unregistered securities consisting of promissory notes in THL Holdings LLC ("THL Holdings") and common stock and warrants in Ferran Global Holdings, Inc. ("Ferran"). Compl. at ¶ 1, Doc. No. 1. In doing so, the defendants allegedly violated the anti-fraud and registration provisions of the federal securities laws, including: Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77e(a) & (c); Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b); and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. *Id.* at ¶ 2.

Regarding the SEC's claims against Mr. Lahr, the SEC and Mr. Lahr settled those claims, and the SEC filed a consent motion for the entry of a final judgment against Mr. Lahr. Doc. No. 10. The court granted this motion and then entered a separate final judgment against Mr. Lahr on June 23, 2020. Doc. Nos. 11, 12.

As for the SEC's claims against Mr. Megas, because it believed Mr. Megas resided in Switzerland, the SEC first attempted to serve him by issuing a request to the Swiss authorities under the Hague Convention for Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"). *See* Decl. of Matthew Scarlato ("Scarlato Decl.") at ¶ 3, Doc. No. 32-1.[2] In a letter dated April 27, 2020, the Swiss authorities informed the SEC

---

[1] Although it does not appear that the Clerk's Office docketed the complaint until March 24, 2020, the Clerk's Office has designated March 23, 2020 as the filing date. *See* Notation Accompanying Doc. No. 1.
[2] The SEC believed it was acting in accordance with Rule 4(f) of the Federal Rules of Civil Procedure. *See* Scarlato Decl. at ¶ 3.

that their attempt to serve Mr. Megas at his last known address was unsuccessful. *Id*. Ex. 1, Doc. No. 32-2; *see also id.* at ¶ 4 (describing letter). The Swiss authorities attached a police report to this letter, which confirmed Mr. Megas was legally domiciled at the address but would be abroad until late August 2020. *Id*. Ex. 2, Doc. No. 32-3. The report stated Mr. Megas did "not want to receive anything between now and then and that he would follow up with us upon his return to Switzerland." *Id.* Given this information, the Swiss authorities indicated they would attempt to serve Mr. Megas again in September 2020. *Id.* Ex. 1.

On May 26, 2020, this court provided notice to the SEC that it had until June 23, 2020, to serve Mr. Megas or face dismissal without prejudice in accordance with Rule 4(m) of the Federal Rules of Civil Procedure. Doc. No. 5. On June 18, 2020, the SEC timely moved for an extension until October 15, 2020, to serve Mr. Megas, Doc. No. 8, which this court granted after finding that the plaintiffs established good cause for the requested extension. Doc. No. 9.

As promised, the Swiss authorities made several efforts to contact Mr. Megas via telephone and to effect service upon him at his known address in September 2020. Scarlato Decl. at ¶ 5. Those efforts, as well as a final attempt on October 11, 2020, were unsuccessful. *Id*. at ¶¶ 5–7. On October 19, 2020, the Swiss authorities sent the SEC a letter formally returning its Hague Convention service request as unexecuted. *Id*. Ex. 3, Doc. No. 32-4.

Because the SEC was unable to serve Mr. Megas, it timely filed a motion on October 15, 2020, seeking another extension until December 14, 2020, to locate and serve Mr. Megas. Doc. No. 13. This court granted the SEC's motion and extended the time for it to serve to December 14, 2020. Doc. No. 14.

During this extended period, the SEC attempted to learn Mr. Megas's whereabouts by submitting a request to its counterpart in Switzerland, the Swiss Financial Market Supervisory

3

Authority ("FINMA"), for Mr. Megas's travel records, known telephone numbers and email addresses, and any other information that might help the SEC determine Mr. Megas's location. Scarlato Decl. at ¶ 9. FINMA was unable to confirm or deny Mr. Megas's whereabouts and stated it did not have the authority to request Mr. Megas's travel records. *Id.* Ex. 4, Doc. No. 32-5; *see also id.* at ¶ 9.

The SEC also requested Mr. Megas's travel records from the United States Department of Homeland Security ("DHS"), searched DHS databases, and contacted Mr. Megas's known United States contacts, including Mr. Lahr. *Id.* at ¶ 10. These efforts did not produce useful information. *Id.* After conducting public internet searches, however, the SEC finally uncovered relevant material, namely, that Mr. Megas was listed as a current or former director of four companies in the United Kingdom. *Id.* at ¶ 11 and Ex. 5, Doc. No. 32-6. These records listed several addresses in the United Kingdom. *Id.* at ¶ 11 and Ex. 5.

The SEC made further progress on October 27, 2020, when counsel for the SEC emailed Mr. Megas at his known email address, tpm14@hotmail.com. *Id.* at ¶ 13 and Ex. 6, Doc. No. 32-7. In sending the email, the SEC used a technology platform called RPost that provides proof of delivery and read receipts if the recipient opens the email. *Id.* at ¶ 14. RPost confirmed the email to Mr. Megas was delivered successfully. *Id.* at ¶ 14 and Ex. 7, Doc. No. 32-8; *see also id.* at ¶ 15 ("After sending the October 27, 2020 email to Megas, I did not receive a return message that the email was returned undelivered.").

On December 14, 2020, in light of Mr. Megas's active email account and United Kingdom addresses, the SEC moved for additional time to serve Mr. Megas at possible residential addresses in the United Kingdom, and, alternatively, to authorize alternative service via Mr. Megas's known

4

email address. Doc. No. 15. This court granted the motion on December 17, 2020, and extended the time for the SEC to serve Mr. Megas until May 28, 2021. Doc. No. 18.

In January 2021, the SEC unsuccessfully attempted to serve Mr. Megas in the United Kingdom, and there was no indication he resided at any of the United Kingdom addresses. Scarlato Decl. at ¶ 16. On February 10, 2021, the SEC served Mr. Megas with the summons and complaint at his known email address, tpm14@hotmail.com, and it received an RPost confirmation that the email was delivered. *Id.* at ¶¶ 17, 18, and Exs. 8–9, Doc. Nos. 32-9, 32-10. Shortly after sending the email, the SEC received an automated reply stating, "it has not been possible to deliver your message to tpm14@hotmail.com as the account does not appear to be in use." *Id.* at ¶ 19 and Ex. 10, Doc. No. 32-11. Notably, the SEC did not receive this reply after its October 27, 2020 email to the same account.[3]

On April 29, 2021, the SEC submitted a request for default against Mr. Megas pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, Doc. No. 22, and the Clerk of Court entered default against Mr. Megas later that day. *See* Unnumbered Docket Entries Between Doc. Nos. 22 and 23. The SEC then filed a motion for default judgment on July 20, 2021. Doc. No. 24. It attempted to serve Mr. Megas with this motion via email but received a response from Hotmail indicating the account had been deactivated. Scarlato Decl. at ¶ 21 and Ex. 12, Doc. No. 32-13.

On July 21, 2021, this court scheduled a July 30, 2021 hearing on the SEC's motion for default judgment. Doc. No. 25. Again, counsel for the SEC attempted to serve Mr. Megas with

---

[3] Counsel for the SEC indicated that he

> sent an email to an inactive Hotmail address to be able to compare its format with the format of the automated response I received from Megas' Hotmail account. After sending, I received an automated reply from Hotmail, a copy of which is attached hereto as Exhibit 11. It has several obvious differences with the format of the automated response I received in response to my February 10, 2021 email to Megas, including a different subject line, and different message body.

Scarlato Decl. at ¶ 20.

5

this order at his email address but received a response from Hotmail that the account had been deactivated. Scarlato Decl. at ¶ 22 and Ex. 13, Doc. No. 32-14.

On July 30, 2021, this court held a hearing on the SEC's motion for a default judgment. Mr. Megas did not participate or otherwise contact the SEC or this court by the time of the hearing. *Id*. at ¶ 24. At the conclusion of the hearing, the court granted the motion and issued a default judgment against Mr. Megas. Doc. No. 27.

Several days later, on August 5, 2021, Mr. Megas filed a motion to dismiss the default judgment. Doc. No. 29. On August 10, 2021, the court entered an order setting a response date for the SEC and scheduling an in-person hearing on this motion for September 10, 2021. Doc. No. 30. On August 18, 2021, Mr. Megas requested that the court hold the hearing telephonically. Doc. No. 31. The SEC filed a response in opposition to the motion to dismiss the default judgment on August 24, 2021. Doc. No. 32. Mr. Megas filed a reply on August 29, 2021. Doc. No. 33. One day later, on August 30, 2021, the SEC submitted a supplemental filing in opposition to the motion. Doc. No. 34. Mr. Megas responded the following day. Doc. No. 35. On September 3, 2021, the court denied Mr. Megas's request to hold the hearing via telephone. Doc. No. 36.

On the same day, Mr. Megas filed a notice of his inability to attend the hearing in person. Doc. No. 38. On September 5, 2021, Mr. Megas refiled his motion to dismiss the default judgment. Doc. No. 37.

After the court rescheduled the hearing on the motion to October 28, 2021, Doc. Nos. 40, 41, Mr. Megas again requested that the court hold the hearing telephonically. Doc. No. 42. The court denied this request. Doc. No. 43. Mr. Megas then moved for recusal of the undersigned on October 27, 2021. Doc. No. 44. On October 28, 2021, the court attempted to conduct the hearing,

but Mr. Megas did not appear. Doc. No. 46. Consequently, the court rescheduled the hearing for November 10, 2021, allowing both parties to participate via telephone. Doc. No. 47.

On November 10, 2021, this court held a telephonic hearing on Mr. Megas's motion to dismiss the default judgment. Doc. Nos. 49, 55. Shortly thereafter, the court denied the motion for recusal of the undersigned and ordered Mr. Megas to file a supplemental brief to his motion to dismiss the default judgment, Doc. No. 51, which he did on December 10, 2021. Doc. No. 54.[4] The SEC filed a response in opposition to Mr. Megas's supplemental response on January 10, 2022, Doc. No. 57, to which Mr. Megas replied on January 18, 2022. Doc. No. 58. On January 20, 2022, the court held another telephonic hearing on the motion. Doc. No. 59.

Mr. Megas's motion to dismiss the default judgment, originally docketed at Doc. No. 29 and refiled as Doc. No. 37, is now ripe for disposition.

## II.   DISCUSSION

In the motion to dismiss the default judgment, Mr. Megas contends the court should dismiss/strike the judgment under Rules 55(c) and 60(b) of the Federal Rules of Civil Procedure insofar as the SEC allegedly (1) engaged in misconduct that prevented him from fully and fairly presenting his case and (2) improperly served him, rendering the default judgment void. *See* Def. Thomas Megas Mot. the Ct. to Dismiss the Default J. Against Him Entered on 30th July 2021 ("Def.'s Mot.") at ECF pp. 3–8, Doc. No. 37. Mr. Megas also appears to argue in his supplemental submission that the court should grant his motion because the court lacks personal jurisdiction over him. *See* Br. at pp. 10–11, Doc. No. 54.[5] The court will first address Mr. Megas's personal jurisdiction argument before addressing his Rule 60(b) claims.

---

[4] The Clerk's Office appears to have unsuccessfully attempted to docket Mr. Megas's supplemental response on two occasions prior to docketing the full response. *See* Doc. Nos. 52, 53.
[5] Unfortunately, the Clerk's Office docketed each page of Mr. Megas's submission as a separate docket number. The court has omitted references to these docket numbers.

A.      **Personal Jurisdiction**

Mr. Megas argues this court lacks personal jurisdiction over him. *See id.* at 10–11. He contends "[t]he nature of [his] visits to the USA are not adequate to establish 'minimum contacts,' . . . there is no evidence of [him] engaging in any activities in Eastern Pennsylvania." *Id.*

To assert personal jurisdiction over a defendant, the court must determine the defendant possesses "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Because the SEC brought this case pursuant to two federal statutes that permit nationwide service of process, *see* 15 U.S.C. §§ 77aa(a), 78u(c), this court analyzes personal jurisdiction "on the basis of the defendant's national contacts." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002) (citations omitted). Specifically, the court examines "both the extent to which [the defendant] availed himself of the privileges of American law and the extent to which [the defendant] could reasonably anticipate being involved in litigation in the United States." *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 295 (3d Cir. 1985).

Here, the complaint sufficiently satisfies the minimum contacts analysis; Mr. Megas had numerous contacts with the United States related to the unlawful conduct the complaint alleges. Ferran, one of the companies through which Mr. Megas and Mr. Lahr executed their alleged fraud, was a United States securities issuer and Mr. Megas was its CEO, treasurer, and chairman of its board of directors. Compl. at ¶ 9. Mr. Megas also filed a Form D with the SEC concerning Ferran's fundraising. *Id.* at ¶ 31. As part of Ferran's allegedly fraudulent activity, Mr. Megas communicated with Mr. Lahr, who resided in the Eastern District of Pennsylvania, and traveled to the United States to meet with investment bankers. *Id.* at ¶¶ 5, 25–27, 85. In addition, Mr. Megas received

wires of Ferran investor funds from Ferran's United States bank account and sent two wires to bank accounts Mr. Lahr controlled in the United States. *Id.* at ¶ 5. These numerous contacts with the United States adequately put Mr. Megas on notice that he could anticipate being involved in litigation in the United States. Accordingly, this court possesses personal jurisdiction over Mr. Megas.

### B.    Mr. Megas's Rule 60(b) Claims

#### 1.    Standard of Review

Rule 55(c) of the Federal Rules of Civil Procedure, which applies to a request to set aside a default judgment, states that a district court "may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b) sets forth defined circumstances under which the court may grant relief from a judgment, including:

**(1)** mistake, inadvertence, surprise, or excusable neglect;

**(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

**(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

**(4)** the judgment is void;

**(5)** the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

**(6)** any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

A decision to set aside a default judgment pursuant to Rule 60(b) falls "primarily to the discretion of the district court." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). In exercising that discretion, the court should consider "first, whether the plaintiff

will be prejudiced; second, whether the defendant has a meritorious defense; and third, whether culpable conduct of the defendant led to the default." *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 122 (3d Cir. 1983) (citing *Feliciano v. Reliant Tooling Co.,* 691 F.2d 653, 656 (3d Cir.1982). Generally, the court does not favor default judgments relative to a decision on the merits. *See $55,518.05 in U.S. Currency*, 728 F.2d at 194. "[I]n passing upon default judgments Rule 60(b) should be 'given a liberal construction.... Any doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits.'" *Feliciano*, 691 F.2d at 656 (quoting *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245 (3d Cir. 1951)).

Here, as indicated above, Mr. Megas seeks relief under Rule 60(b)(3) and (b)(4). The court will first address the *Feliciano* factors and then consider each of his contentions in turn.

## 2. Rule 60(b) Motion Generally

The first *Feliciano* factor asks us to consider whether the SEC would suffer any prejudice if the court opened the judgment. Here, the SEC has not demonstrated any prejudice would ensue if the court granted Mr. Megas's motion to dismiss the default judgment. As in *Feliciano*, the SEC has "not asserted loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment to support a finding of prejudice." 691 F.2d at 657 (citing *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982)). As such, this first factor weighs in favor of Mr. Megas; the second and third factors, however, overwhelmingly favor the SEC.

As to the second factor, "[t]he showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (quoting *Tozer*, 189 F.2d at 245). Mr. Megas has failed to allege anything beyond simple denials or conclusory statements. He has

not presented a meritorious defense to this action, meaning the second factor weighs in the SEC's favor.

Finally, the third factor "focuses on whether the defendant was culpable, that is, whether it acted willfully or in bad faith." *Feliciano*, 691 F.2d at 657. As described in more detail below, Mr. Megas knew about this litigation long before the court entered the default judgment against him yet took no action until the court entered the judgment. His culpable conduct weighs in favor of the SEC.

Because Mr. Megas has not identified a meritorious defense and because Mr. Megas willfully avoided timely action in this matter, the *Feliciano* factors favor a denial of the motion for default judgment. For the sake of thoroughness, the court will now address each of Mr. Megas's individual arguments under Rule 60(b).

### 3. Misrepresentation or Misconduct Under Rule 60(b)(3)

Mr. Megas's first argument in his motion to dismiss the default judgment arises under Rule 60(b)(3), which permits the court to vacate a final judgment where there is "fraud . . .misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Mr. Megas argues the SEC's motions for time extensions "were bad faith filings and amounted to an abuse of process." Def.'s Mot. at ¶ 4. He contends the SEC engaged in "misrepresentation, or misconduct." *Id.* at ECF p. 8.[6]

For Mr. Megas's Rule 60(b)(3) argument to succeed, he must establish, "by clear and convincing evidence" that the SEC "engaged in fraud or other misconduct, and that this misconduct prevented [him] from fully and fairly presenting [his] case." *Gochin v. Thomas Jefferson Univ.*, 667 F. App'x 365, 367 (3d Cir. 2016) (per curiam) (citing *Brown v. Pa. R.R. Co.*,

---

[6] The motion is unpaginated. As such, the court uses the pagination provided by ECF.

282 F.2d 522, 527 (3d Cir. 1960) and *Stridiron v. Stridiron*, 698 F.2d 204, 206–07 (3d Cir. 1983)). Mr. Megas "carries a heavy burden" to satisfy Rule 60(b)(3). *Id.*

Mr. Megas has not met this burden. He has failed to demonstrate the SEC engaged in any misrepresentation or misconduct. In each of its extension requests, the SEC submitted an ample factual record illustrating "good cause" for the extension as Rule 4(m) of the Federal Rules of Civil Procedure requires. Fed. R. Civ. P. 4(m); *see* Doc. Nos. 8, 13, 15. The SEC's motions provide considerable evidence of its diligent and good faith efforts to serve Mr. Megas. *See id*.

In seeking its first extension of time in June 2020, the SEC cited information it received from the Swiss authorities attempting to effect the SEC's Hague Convention request. *See* Mem. of Law in Supp. of Pl's Mot. for Extension of Time to Serve Def. at 1–2, Doc. No. 8. It indicated that "[o]n April 27, 2020, the Swiss authorities sent a letter to [SEC] counsel stating that their first attempt to serve Megas was unsuccessful because he was out of the country at the time, and that Megas was expected to return at the end of August 2020." *Id.* at 2. According to this letter, Mr. Megas told the authorities he did "not want to receive anything between now and then and that he would follow up with us upon his return to Switzerland." Scarlato Decl. Ex. 2. This report, based in part on Mr. Megas's *own* statement, prompted the SEC to file its motion for additional time to serve Mr. Megas, which the court granted.

In its October 2020 motion for an extension of time, the SEC again included information from Swiss authorities demonstrating the authorities could not locate Mr. Megas despite their diligent efforts. *See* Mem. of Law in Supp. of Pl.'s Mot. for Extension of Time to Serve Def. Thomas Megas at 1–2, Doc. No. 13. In light of this failure, the SEC reasonably requested an extension to make other efforts to locate Mr. Megas and determine the best alternative method of serving him.

The SEC's final motion for an extension of time to serve, which it filed in December 2020, provided a similarly thorough explanation. *See* Pl.'s Mem. in Supp. of Its Mot. to Authorize Alternative Service, or, Alternatively, to Grant an Extension of Time to Serve Def. Thomas Megas at 1–5, Doc. No. 15. In this motion, the SEC requested permission to serve Mr. Megas via email, or, alternatively, another extension of time to serve him. The SEC explained that it had recently learned of Mr. Megas's registered addresses in the United Kingdom, as well as an email address that appeared active. *See id.* at 4. Once again, the court determined the SEC had made a good cause showing and granted its request.

Because Mr. Megas does not provide any evidence of the SEC's alleged misconduct or misrepresentation, and because the SEC demonstrated its diligent efforts to serve Mr. Megas, which provided the "good cause" Rule 4(m) required for the extensions, Mr. Megas does not meet the high burden of proof required to vacate the default judgment under Rule 60(b)(3).

### 4. Void Judgment Under Rule 60(b)(4)

Mr. Megas also argues the court should vacate the default judgment under Rule 60(b)(4) because he was not properly served with the complaint and, as such, the judgment is void. Def.'s Mot. at ¶ 45. He argues that (1) there is no evidence he read the SEC's email serving him and (2) Switzerland does not permit service via email. *Id.*

Rule 60(b)(4) only applies "in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (citations omitted). Courts reserve such relief "only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *Id.* (citing *Nemaizer*

*v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986)). Notably, "Rule 60(b)(4) does not provide a license for litigants to sleep on their rights." *Id.* at 275.

The situation here is far from the "exceptional case" warranting Rule 60(b)(4) relief. *Id.* Rule 4(f) of the Federal Rules of Civil Procedure governs the service of individual defendants in foreign countries. Rule 4(f)(3) "directs that when there are no internationally agreed means of service, such as those means codified by the Hague Convention or otherwise, alternative service may be permissible, so long as service is ordered by the court and is not prohibited by international agreement." *Sec. & Exch. Comm'n v. Dubovoy*, Civ. A. No. 15-6076(MCA)(MAH), 2016 WL 7217607, at *2 (D.N.J. Dec. 13, 2016). "[W]here a defendant's address is not known, the Hague Convention does not apply, and where attempts at personal service have been futile, service may be 'by other means not prohibited by international agreement as may be directed by the court.'" *Braverman Kaskey, P.C. v. Toidze*, Civ. A. No. 09-3470, 2013 WL 6095679, at *4 (E.D. Pa. Nov. 19, 2013), *aff'd*, 599 F. App'x 448 (3d Cir. 2015).

As the SEC's attempts to serve Mr. Megas were futile, this court authorized alternative service to his known email address. *See* Order Granting Pl.'s Mot. to Authorize Alternative Service, Doc. No. 17. This court affirmed that method of service was proper when it granted the plaintiff's motion for default judgment. Final J. as to Def. Thomas Megas ("Final J."), Doc. No. 27. In making both determinations, the court found there was an ample factual record to permit alternative service via email. Because Mr. Megas has not provided any evidence of a "jurisdictional error or . . . a violation of due process," the court cannot grant relief under Rule 60(b)(4).

Mr. Megas's own testimony during the court's November 10, 2021 hearing on the motion to dismiss the default judgment corroborates this conclusion. During the hearing, Mr. Megas admitted he had notice of this litigation one year before the default judgment. Tr. of Hearing on

Motion for Default J. ("Hearing Tr."), at pp. 8:12–9:25; 16:14–17:8; 39:6–11, Doc. No. 55. He did not deny that he may have made changes to his email account while the SEC attempted to serve him at that address. He admitted he worked with a "team" of people that had access to the account and did not deny he may have asked someone to make changes to the account to make it seem as though he were not using it. *Id.* at pp. 24:23–28:18. His testimony confirms he knew about this litigation long before the court entered the default judgment against him. Rule 60(b)(4) does not permit Mr. Megas to "sleep on" his rights. *United Student Aid Funds, Inc.*, 559 U.S. at 275. Accordingly, Mr. Megas has not shown that the court's July 30, 2021 order granting a default judgment is void, and the court will not grant him relief under Rule 60(b)(4).

### III.   CONCLUSION

Mr. Megas believes the court should dismiss the default judgment entered against him, arguing the SEC engaged in misconduct and that service was improper. He also claims that the court lacked personal jurisdiction over him. For the reasons discussed above, this court had personal jurisdiction over Mr. Megas when the court entered default judgment against him. In addition, Mr. Megas has not satisfied his burden to show that the court should strike off that default judgment under Rule 60(b). Therefore, the court will deny Mr. Megas's motion to dismiss the default judgment.

A separate order follows.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.